UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
KENNETH BROWN,

              Petitioner,

-against-

THOMAS LAVALLEY, Superintendent, and
ANDREW CUOMO, Attorney General,

              Respondent.

------------------------------------------------------------------x

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAY 17 2013 ★
BROOKLYN OFFICE

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
10-CV-1756 (CBA) (CLP)

**AMON, Chief United States District Judge:**

      Petitioner Kenneth Brown ("Brown") objects to Magistrate Judge Pollack's report and recommendation ("R&R"), recommending that this Court deny his petition for habeas corpus. (DE 10, 13.) For the following reasons, the Court adopts the R&R as the opinion of this Court and the petition for habeas corpus is denied.

## BACKGROUND

      The Court assumes familiarity with the facts and background of this case as set forth in the R&R (R&R at 1-10) but reviews them briefly here. Brown was convicted in New York Supreme Court of burglary in the first degree and murder in the second degree. (Tr. 682.) According to trial testimony, Brown, along with William King and Yolanda Roker, participated in a scheme to steal studio equipment from a man named Kenneth Haynes. On the night of July 25, 2005, Brown and King entered Haynes' apartment at night, intending to carry out the scheme. (Tr. 259-70.) Haynes awoke, and, according to King's testimony, Brown and King beat

1

Haynes, bound him with wire, and gagged him with a sock. Brown also covered Haynes' face with a pillowcase. (Tr. 271-79.) Brown, King, and Roker then loaded some equipment into Brown's car and left. (Tr. 281-85.) According to Brown's testimony, although he realized he was helping King steal equipment, he was not involved at all in the assault on Haynes. (Tr. 517-19, 527-28.) He testified that he did not observe anyone tie Haynes up or put a sock in his mouth, as he was in another room during the fight. King rejoined Brown, and the two of them took the equipment into the elevator and out of the building. (Tr. at 520.) According to an autopsy of Haynes' body, Haynes died of asphyxiation due to gagging and strangulation. (Tr. 501-02.)

After Brown's conviction and unsuccessful state appeals, he petitioned for a writ of habeas corpus in this Court, pursuant to 28 U.S.C. § 2254. As he did in state court, Brown challenged his convictions on the basis that his counsel was constitutionally ineffective under Strickland v. Washington, 466 U.S. 668 (1984), for conceding the burglary charge and failing to object to an erroneous burglary instruction. Magistrate Judge Cheryl L. Pollak issued an R&R recommending that the Court deny Brown's petition. After receiving an extension of time to file objections, Brown filed objections to the R&R on December 28, 2011.

## DISCUSSION

### I. Standards of Review

Where objections are filed to an R&R, the Court reviews those portions of the R&R de novo. The portions to which no objections are made are reviewed for clear error. Larocco v. Jackson, 2010 WL 5068006, at *2 (E.D.N.Y. 2010). A District Court "may accept, reject, or

2

modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas petitioner is entitled to relief from a state court's "adjudication on the merits" of a claim only if it resulted from a decision that "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or . . . [was] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1)–(2); see also Williams v. Taylor, 529 U.S. 362, 405–06 (2000); Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005). The Supreme Court has explained the requirements of § 2254(d) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-413. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011).

The standard for ineffective assistance of counsel is supplied by Strickland v. Washington, 466 U.S. 668 (1984). To establish ineffective assistance of counsel, a petitioner must show that (1) that counsel's performance fell below an objective standard of

3

reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 687, 694. "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances," and "[t]here is a strong presumption that counsel's performance falls within the wide range of professional assistance." Kimmelman v. Morrison, 477 U.S. 365, 381, 384 (1986) (internal quotation marks omitted).

## II. Concession of the burglary charge

Brown contends that it was not reasonable trial strategy for counsel to concede that Brown committed burglary in order to focus on defending the murder charge and that counsel should have pursued a defense to burglary on grounds that Brown's entry of the apartment was lawful. He argues that the evidence at trial showed that, under New York law, Roker had actual or apparent authority over Haynes' apartment. Thus, because Brown entered Haynes' apartment with Roker's permission, the unlawful entry element of burglary was not met. As the murder charge was a felony murder charge predicated on the burglary, a successful defense to burglary would have resulted in the acquittal of Brown on both counts. Brown further argues that the state appellate decision finding that counsel was not ineffective was unreasonable.

Magistrate Judge Pollak concluded that "[f]rom the testimony adduced at trial, it was by no means clear that Roker had been given authority over the apartment by [Haynes]." (R&R at 16.) Thus, "given the uncertainty surrounding Roker's authority to allow petitioner into Haynes' apartment, it was reasonable for trial counsel to concede the burglary and focus on the affirmative defense to felony murder." (R&R at 19-20.)

4

Brown objects to this conclusion. First, he argues that even if the evidence did not *conclusively* demonstrate that Roker had authority to allow Brown into the apartment, the evidence was such that the prosecution could not have met its burden to prove beyond a reasonable doubt that Roker did not have authority. (Objections to R&R at 4, 8-9.) Second, Brown argues that even absent actual authority, the evidence showed Brown's good faith belief that Roker had authority. He argues that the Magistrate Judge, in rejecting this argument, erroneously relied on King's testimony regarding Roker's relationship to Haynes because King's understanding is irrelevant to petitioner's good faith belief. (Objections to R&R at 9.) Brown also maintains that his admissions on the stand that he understood he was committing a burglary are of no moment because "[i]t is obvious [he] was using the common understanding of the term burglary and not the legal definition of entering unlawfully with intent to commit a crime therein." (Objections to R&R at 10.) In particular, he takes issue with the Magistrate Judge's reliance on his testimony that King "had me under the impression that we was gonna just sneak in . . . ." (R&R at 19 (quoting Tr. at 516).) He argues that although he knew he was taking Haynes' property without consent, he had every reason to believe that Roker could consent to entry of the apartment and that he was sneaking in simply not to wake Haynes. (Objections to R&R at 10.)

Finally, Brown challenges the Magistrate Judge's determination that the defense to felony murder was "potentially successful" while the defense to burglary was "weak." (Objections to R&R at 10-12; R&R at 20.) Brown argues that in his case, uncontested forensic evidence showed that his fingerprints were on the duct tape found on Haynes. Thus, counsel could not have reasonably chosen to forgo a defense to burglary in favor of the affirmative defense to

5

felony murder, which requires the defendant to show, inter alia, that he "did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof." N.Y. Penal Law § 125.25(3)(a).

Having reviewed the R&R de novo, the Court agrees with the R&R's conclusion that trial counsel's decision to concede the burglary charge and pursue the affirmative defense to felony murder was reasonable, and, more relevantly, that the state appellate court's decision that trial counsel was effective was a reasonable application of Strickland. The Court's review of the trial record shows, consistent with the R&R's finding, that although there was some evidence to suggest that Roker had authority to invite Brown into the apartment, there also was evidence to suggest the opposite. Brown argues that based on the conflicting evidence, the prosecution would have been unable to prove beyond a reasonable doubt that Roker lacked authority. However, the mere fact that there may be some evidence supporting a defendant's position does not mean the prosecution cannot meet its burden of proof. Here, the Magistrate Judge correctly determined that the evidence on Roker's authority was not so clear that reasonable trial counsel could not have decided to concede the burglary charge.

As for the arguments regarding Brown's good faith belief in Roker's authority, the Court agrees with the R&R that King's testimony was relevant on this point. As Brown himself states, "[t]he only relevant evidence is what [Brown] knew" about Roker's authority. (Objections to R&R at 9-10.) As Brown testified that he had "no relationship with [Roker]" and only "knew her through [King]" (Tr. 546), what King believed about Roker's relationship to Haynes is relevant to what Brown would have believed about Roker's authority over Haynes' apartment. Further, although Brown argues that his admissions on the stand and his statement that he and

6

King were going to "sneak in" meant only that he believed he was stealing Haynes' property, not entering unlawfully, that is not the only reasonable conclusion a jury could draw from such testimony. A jury could reasonably have concluded based on such testimony that Brown knew he was entering unlawfully, and the Magistrate Judge properly relied on such factors to determine that counsel's decision to concede the burglary charge was reasonable.

Finally, the fact that Brown's fingerprint was found on a piece of duct tape used to bind Haynes (Tr. 373, 406) did not render counsel's strategy unreasonable. When questioned about the fingerprint, Brown testified, "I gave [King] some duct tape and some masking tape awhile ago . . . . because every now and then [King] ask me for some duct tape because he do [DJ] work and they need some duct tape." (Id. at 577). As Brown had a viable explanation for the fingerprint, it was not unreasonable for counsel to pursue a defense to felony murder while conceding the burglary.

The reasonableness of counsel's strategy becomes all the more apparent when viewed in light of *all* of the circumstances of Brown's case, which is the relevant inquiry on an ineffective assistance claim. See Strickland, 466 U.S. at 688 ("In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."). Evidence in support of the burglary charge included testimony tending to show that Brown knew he was entering Haynes' apartment unlawfully, evidence that Brown knew he was entering Haynes' apartment secretively to take his property without permission, and Brown's own admissions, in both his direct and cross examinations, that he knew he was committing a burglary. Although Brown insists that he was not admitting an unlawful entry, the fact remains that Brown confirmed that he committed burglary in front of the jury three times.

7

(Tr. 559-62.) Counsel would have faced considerable difficulty arguing that, despite Brown's own testimony, he was not actually guilty of burglary. In contrast, the affirmative defense to felony murder was, as the Magistrate Judge found, "potentially successful." Brown did not admit to involvement in the murder of Kenneth Haynes either in his written statement, oral statement, direct examination, or cross examination. Further, consistent with the other elements of the felony murder defense, there was no evidence that he, King, or Roker was armed with any kind of weapon. And, as discussed above, the fingerprint found on the tape was not fatal to this defense. The Court agrees with the Magistrate Judge that, in these circumstances, "[c]ounsel could reasonably have come to the conclusion that his own credibility with the jury . . . could have been damaged if he had made the argument that petitioner did not commit the burglary" and that it was within counsel's discretion to "focus his energies on presenting the most potentially successful affirmative defense to the jury." (R&R at 20.) This conclusion is consonant with Second Circuit case law, which has found that counsel's concessions as to certain elements or charges can be a reasonable strategic decision under Strickland. See, e.g., United States v. Walker, 24 F. App'x 57, 60 (2d Cir. 2001) (finding that "[i]n light of the overwhelming government proof" that the voice on a recording belonged to the defendant, trial counsel's concession in summation that it was her client's voice on the tape was a "strategic decision to try and maintain credibility with the jury" that "could hardly be considered ineffective assistance of counsel"); Farrington v. Senkowski, 214 F.3d 237, 244 (2d Cir. 2000) (finding that where trial counsel specifically stated in summation "I ask you to find [defendant] guilty of attempted grand larceny," such concession was a plausible strategic option to persuade the jury to acquit of more serious charges "where the evidence and predatory nature of the crime offered little hope of an

8

acquittal on all counts"); United States v. Arnold, 126 F.3d 82, 89 (2d Cir. 1997) (finding that "[t]rial counsel's strategy to concede the other elements of the offense [and pursue a defense focused on lack of specific intent] was reasonable in light of the overwhelming evidence in the case, e.g. [a government cooperator's] testimony that [defendant] assisted him in the carjackings, several victims' identification of [defendant], and [defendant's] own confession."), aff'd sub nom. Holloway v. United States, 526 U.S. 1 (1999).

As counsel's performance was reasonable under Strickland, the state appellate court's decision was not an unreasonable application of Strickland under AEDPA. Accordingly, Brown's claim on this ground is denied.

### III. Failure to Object to the Burglary Instruction

In his petition, Brown argues that his trial counsel was ineffective on the additional ground that he failed to object to an erroneous jury instruction on the unlawful entry element of burglary. (Pet'r Mem. in Support of Habeas at 22-23.) The trial judge instructed the jury that "[a] person enters unlawfully when that person doesn't have permission from the owner to enter the dwelling" and "[a] person knowingly enters unlawfully a dwelling when he is aware that he is entering without the permission of the owner." (Trial Tr. at 655 (emphasis added).) Brown contends that under New York law, persons other than "owners" can have authority to grant license and privilege to enter a dwelling.

Magistrate Judge Pollak found that "counsel's failure to object to [the instruction] was of a piece with his overall trial strategy of conceding the burglary and pursuing the one available affirmative defense that was supported by the evidence" and did not fall below the Strickland

9

standard. Accordingly, the state appellate court reasonably applied <u>Strickland</u>. (R&R at 23.) Brown did not specifically object to this portion of the R&R.

The Court agrees with the R&R that, given counsel's strategy of conceding the burglary charge, which was reasonable under <u>Strickland</u>, there was no need to correct the instruction to reflect that someone other than an owner could give license to enter a dwelling. See <u>Farrington v. Senkowski</u>, 214 F.3d at 244 (holding that trial counsel's failure to object to an erroneous larceny instruction was not ineffective under <u>Strickland</u> because "the failure to object to the challenged language was part of appellant's trial counsel's [reasonable] strategy to concede guilt of attempted larceny").

## CONCLUSION

For the reasons discussed above, as well as those set forth in the Magistrate Judge's well-reasoned R&R, Brown's habeas petition is denied. No certificate of appealability shall issue because there has been no "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). The Clerk of Court is directed to enter judgment and to close this case.

Dated: Brooklyn, New York
       May 16, 2013

s/Carol Bagley Amon

Carol Bagley Amon
Chief United States District Judge

10